**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **HANY NABIL ROSHDY AZAB,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:26-cv-01345** |
| | ) | **Judge Aleta A. Trauger** |
| **SCOTT LADWIG, *et al.*,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**MEMORANDUM & ORDER**

The Petitioner, Hany Nabil Roshdy Azab, is a Coptic Christian from Egypt who sought refuge in the United States in 2023 after members of a radical Islamic group brutally attacked him on multiple occasions for his Christian beliefs.[1] (Doc. No. 1 at 14–15.) Immigration authorities found that Azab demonstrated a reasonable possibility of persecution based on his Christian faith and paroled him into the United States. Two weeks ago, the Government summarily detained Azab. The Government now seeks to deport him back to Egypt—a prospect that Azab fears will be "disastrous" because he faces "the near-certainty of physical assault and/or death if he is sent back to Egypt" given his refusal to renounce his Christian faith and convert to Islam.

Azab filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, alleging that his detention violates the Immigration and Nationality Act ("INA"), its implementing regulations, and the Due Process Clause of the Fifth Amendment to the United States Constitution. He seeks, among other things, an order of immediate release from detention. For the following reasons, the Petition is **GRANTED**.

---

[1] Given significant inconsistencies in the Petition's paragraph numbering, the court will cite to the Petition's page numbers for clarity.

## I. BACKGROUND

The Petitioner is a citizen of Egypt and a devout Christian. (*Id*. at 14–15.) In Egypt, the Petitioner volunteered at his church at least twice a week where he handed out food and clothing to people in need. (*Id*. at 15.) Apparently, members of a radical Islamic group were offended by the Petitioner's Christian faith. (*Id*.) They "accused him of preaching Christianity and physically assaulted him on three separate occasions." (*Id*.) During the worst beating, the Muslim radicals "surrounded him, beat him with a baton, cursed his religion, and threatened to kill him unless he converted to Islam." (*Id*.) The Petitioner refused.

In August 2023, the Petitioner fled Egypt and sought refuge in the United States. (*Id*. at 14.) He was detained by immigration authorities. (*Id*.) In November 2023, the Petitioner passed a "Credible-Fear Interview" after an asylum officer with United States Citizenship and Immigration Services ("USCIS") determined that the Petitioner had established a reasonable possibility of religious persecution if forced to return to Egypt. (*Id*. at 15; Doc. No. 1-2 at 29.) The Petitioner was paroled into the United States and issued a Form I-862 Notice to Appear. (Doc. Nos. 1-3; 1-6.)

Since then, the Petitioner has filed an application for asylum with immigration authorities, which remains pending. (Doc. No. 1 at 16.) He has lived in the United States for three years, fully complied with all conditions of his release, and committed no criminal offenses. (*Id*.) On September 18, 2026, the Petitioner was detained by Immigration and Custom Enforcement ("ICE") agents. (*Id*.) The Government detained the Petitioner "without a warrant, without prior notice, without a pre-deprivation custody determination or bond hearing before a neutral decisionmaker, and without any individualized assessment of risk." (*Id*. at 1–2.) The Petitioner was detained even though the Government had previously paroled him into the country's interior, which it failed to

properly terminate. (*Id*. at 19.) He was quickly moved from a detention center in Nashville to a detention facility in Western Tennessee. (Doc. No. 9 at 2.)

## II. PROCEDURAL HISTORY

The Petitioner filed his Petition on the same day that he was detained, which was accompanied by an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction. (Doc. No. 4.) The Emergency Motion requested an order enjoining the Government from (1) removing the Petitioner from the United States pending resolution of his Petition for a writ of habeas corpus; and (2) transferring him outside the Middle District of Tennessee pending resolution of his Petition. (*Id*.)

The court quickly issued an Order granting the Petitioner's Emergency Motion. (the "September 18 Order," Doc. No. 6.) The September 18 Order, however, came too late because the Government had already transferred the Petitioner outside the Middle District of Tennessee and into the Western District of Tennessee with a final destination in Louisiana—a state sitting within the boundaries of the Fifth Circuit—allegedly to circumvent the Sixth Circuit's binding decision in *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026) that would require the Government to immediately release the Petitioner. (Doc. Nos. 1 at 16–17; 9 at 2.) The court learned of this development when the Petitioner filed a second Emergency Motion on September 21, 2026, which requested that the court modify its September 18 Order to clarify that the Government was also enjoined from transferring the Petitioner outside of the state of Tennessee pending further order of the court. (Doc. No. 7.) The court granted that motion by amending its September 18 Order and enjoining the Government "and all persons acting in concern or participation with them who receive actual notice of this Order" from (1) transferring the Petitioner outside of the state of Tennessee pending resolution of the Petition; and (2) removing, deporting, or otherwise causing the Petitioner to depart from the United States pending resolution of the Petition. (the "September

21 Order," Doc. No. 9.) To date, the Government has not responded to the Petition with written briefing.

On October 2, 2026, the court held a telephonic hearing with counsel for the Petitioner and the Government and made clear that a ruling would soon be issued. (Doc. No. 17.) Thereafter, the Petitioner submitted supplemental authority that he maintains shows that his continued detention is unlawful under the INA and its implementing regulations. (Doc. No. 15.) The Government also submitted documents for the court's consideration, including a notice reflecting that a hearing has been scheduled in immigration court on October 9, 2026 (Doc. No. 16) and a single-page document that reiterates the Government's position that the Sixth Circuit's decision in *Lopez-Campos* is not controlling here. (Doc. No. 18.)

## III. DISCUSSION

The Petitioner asserts three claims for statutory and constitutional violations. In Count 1, the Petitioner asserts that his statutory due process rights were violated because he is subject to the *permissive* detention provisions of 8 U.S.C. § 1226(a)—as opposed to the *mandatory* detention provisions under 8 U.S.C. § 1226(b)—which require that the noncitizen be provided with prior notice and an individualized bond hearing to challenge his detention in standard removal proceedings. (Doc. No. 1 at 17–19.) His statutory due process rights were violated because the Government failed to afford him with prior notice or an individualized bond hearing, as required by 8 U.S.C. § 1226(a) and the Sixth Circuit's decision in *Lopez-Campos v. Raycraft*, 175 F.4th 713, 734 (6th Cir. 2026). (*Id.*)

In Count 2, the Petitioner claims that his re-detention (*i.e.*, subsequent detention after being released and paroled in 2023) without the proper termination of his earlier grant of parole is unlawful under the INA and its implementing regulations. (*Id.* at 19–20.) In Count 3, the Petitioner

asserts similar due process violations under the Due Process Clause of the Fifth Amendment. (*Id.* at 20–25.)

The Petitioner seeks a declaration that his detention is unlawful under 8 U.S.C. § 1226(a) and that the Government failed to comply with the relevant provisions of the INA when it purported to terminate the Petitioner's parole and arrested him. (*Id.* at 30–31.) He seeks an order (1) compelling the Government to immediately release him from detention with all possessions, property, and documents that Petitioner had at the time he was taken into custody; (2) enjoining the Government from re-detaining him under § 1225(b) in the future; and (3) enjoining the Government from re-detaining him in the future without first providing a pre-deprivation hearing before an impartial adjudicator, as required under § 1226(a). (*Id.* at 31.) The Petitioner also seeks an award of attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412. (*Id.*)

To date, the Government has not filed any written briefing that responds to the allegations in the Petition. Counsel for the Government seemed to argue during the October 2, 2026 hearing that the Petitioner is subject to 8 U.S.C. § 1225(b)—not § 1226(a)—despite the Petitioner's being released on parole into the country's interior in 2023 after an asylum officer concluded that the Petitioner established a reasonable possibility of religious persecution. (Doc. Nos. 1 at 15–16; 1-2 at 29; 1-3 at 3; 1-6.) The Government's position is without merit. As detailed below, the court finds that the Petitioner is subject to the discretionary detention framework under § 1226(a), the Petitioner's statutory due process rights to an individualized bond hearing were violated, and the Government failed to properly terminate the Petitioner's parole. The court will therefore grant the Petition, as outlined below.

### A. The Petitioner is Detained Under 8 U.S.C. § 1226(a)—Not 8 U.S.C. § 1225(b)

It is well-settled that noncitizens subject to expedited removal proceedings can avoid expedited removal by indicating "either an intention to apply for asylum" or "a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). In such cases, the noncitizen must be referred "for an interview by an asylum officer," who must determine whether he "has a credible fear of persecution." *Id.* §§ 1225(b)(1)(A)(ii), (B)(ii). If the asylum officer determines that a noncitizen's asserted fear is credible, the noncitizen "will receive 'full consideration' of his asylum claim in a *standard removal hearing*." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 110 (2020) (quoting 8 C.F.R. § 208.30(f)) (emphasis added).

Here, the record establishes that the Petitioner was placed in standard, non-expedited removal proceedings and is subject to § 1226(a)'s discretionary detention framework. In 2023, the Petitioner was released from custody and paroled into the United States after an asylum officer concluded that the Petitioner established a fear of religious persecution. Those facts—which the Government does not dispute—are dispositive here. *See Castillo v. Bullock, et al.*, No. 3:26-cv-01166, 2026 WL 2923716, at *3 (M.D. Tenn. Sept. 29, 2026) (noncitizen subject to standard, non-expedited removal proceedings and detained under § 1226(a) when an "asylum officer determined that the [noncitizen] had a credible fear of persecution" and paroled the noncitizen into the country after issuing a Form I-862 Notice to Appear); *Coronado Aldo v. Lewis*, No. 4:26-cv-00388-GNS at *4 (W.D. Ky. July 22, 2026) (noncitizen "was placed in standard removal proceedings" and detained under § 1226(a) when noncitizen "received a credible-fear interview before an asylum officer and was determined to have a credible fear of prosecution in his home country."); *Singh v. Hott*, No. 4:26-cv-256, 2026 WL 1880217, at *3–4 (W.D. Ky. June 30, 2026) (similar; noncitizen detained under § 1226(a) when noncitizen "received a credible-fear interview before an asylum

officer" and "[t]he asylum officer found that [the noncitizen] had a credible fear of persecution" and was paroled into the country).

To be clear, the Petitioner was placed in standard, non-expedited removal proceedings. This is evidenced by the fact that an asylum officer determined that the Petitioner had adequately established a reasonable possibility of persecution. (Doc. No. 1-2.) Immigration authorities thereafter paroled the Petitioner into the interior of the country, which is reflected in the issuance of the I-862 Notice to Appear. (Doc. Nos. 1-3; 1-6.) Consequently, the Petitioner is subject to § 1226(a)'s discretionary detention provisions. Because the Petitioner was subject to § 1226(a)'s statutory detention scheme, he was entitled to an individualized bond hearing to challenge his detention. *Lopez-Campos v. Raycraft*, 175 F.4th 713, 734 (6th Cir. 2026). The record, however, is devoid of any indication that such a hearing was provided. On that basis alone, the court will order the Petitioner's immediate release from detention. Likewise, the fact that a hearing before an immigration court will take place on October 9, 2026 (Doc. No. 16)—weeks *after* the Petitioner's detention which violated the INA and its implementing regulations—does not cure the due process deficiencies which have already occurred here.

### B. The Government Failed to Comply with the INA when It Purported to Revoke the Petitioner's Parole

The record is equally clear that the Government failed to comply with the relevant provisions of the INA and its implementing regulations when it re-detained the Petitioner without properly terminating his earlier grant of parole. To terminate a noncitizen's earlier grant of parole under 8 U.S.C. § 1182(d)(5)(A), the Government must also provide an "'individualized determination or an opportunity to be heard,'" which includes "(1) a decision by an appropriate official on whether the purpose of parole has been served; (2) written notice of the reasons for the termination; and (3) an opportunity to rebut the reasons given for the termination. *Castillo*, 2026

WL 2923716, at *3–4 (quoting *Lozano Castano v. LaRose*, No. 3:26-cv-01747-RBM-VET, 2026 WL 1194854, at *2 (S.D. Cal. May 1, 2026)). There is no evidence that suggests such individualized factfinding occurred here.

For example, the Government *does not even argue* that its termination of the Petitioner's parole was the product of reasoned decision-making. So, the court is left with the only logical conclusion: the Government failed to comply with the applicable statutory and regulatory requirements when it purported to terminate the Petitioner's parole. That failure means the Government's arrest and detention of the Petitioner exceeded its authority under the INA and its implementing regulations, which provides independent grounds to order the Petitioner's release from detention. *Castillo*, No. 3:26-cv-01166, 2026 WL 2923716, at *4; *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 146 (W.D.N.Y. 2025) (the lack of any evidence suggesting that a case-specific determination was made to terminate noncitizen's parole meant that purported termination "violated [noncitizen's] rights under the statute and regulations.").

## IV. CONCLUSION

For the reasons stated herein, the Petitioner is entitled to relief under § 2241. The Government violated the Petitioner's statutory due process rights when it summarily detained him without an individualized bond hearing, as required under 8 U.S.C. § 1226(a) and the Sixth Circuit's decision in *Lopez-Campos v. Raycraft*, 175 F.4th 713, 734 (6th Cir. 2026). The Government further violated the Petitioner's statutory due process rights under the INA and its implementing regulations when it purported to terminate the Petitioner's parole without any individualized fact-finding by an official with the appropriate authority. The writ is therefore **GRANTED**.

The court **DECLARES** that the Government's continued detention of the Petitioner is unlawful. The court **FURTHER DECLARES** that the Petitioner is subject to the discretionary

detention provisions of 8 U.S.C. § 1226(a) and that the Petitioner's re-detention in the future without an individualized determination by the Government violates the INA and its implementing regulations. The Government is **ORDERED** to immediately release the Petitioner from custody. The Petitioner's release **SHALL** occur in no case later than 1:00 p.m. CST on Tuesday, October, 6, 2026, with all possessions, property, and documents that Petitioner had at the time he was taken into custody.

The Government is **ENJOINED** from (1) transferring the Petitioner outside of the state of Tennessee while his Petition is pending; and (2) re-detaining the Petitioner in the future without first providing a pre-deprivation hearing before an impartial adjudicator, as required by 8 U.S.C. § 1226(a) and the Sixth Circuit's decision in *Lopez-Campos*.

Having determined that the Government's detention and purported termination of the Petitioner's parole and his arrest violates the INA and its implementing regulations, the court declines to address the Petitioner's arguments that his constitutional rights under the Fifth Amendment were violated. (Doc. No. 1 at 20–25.) Finally, the Petitioner's request for attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, must be made by a separate motion.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge